829 F.2d 37
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
Milan J. PARIK, Appellant.
 No. 86-5520
 United States Court of Appeals, Fourth Circuit.
 Submitted April 21, 1987.
Decided August 24, 1987.
 
 (Steven D. Benjamin, on brief), for appellant.
 (David A. Faber, United States Attorney, Amy M. Lecocq, Assistant United States Attorney, on brief), for appellee.
 Before WIDENER, JAMES DICKSON PHILLIPS and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Milan and Lida Parik, husband and wife, were cocaine traffickers plying their trade in the Southern District of West Virginia, and elsewhere, until February 1985, when they were arrested by New Jersey law enforcement officials. They were subsequently indicated by the grand jury for the Southern District of West Virginia and convicted by a jury of conspiracy to possess cocaine with the intent to distribute, possession of cocaine with the intent to distribute, and travel in interstate commerce to promote an illegal enterprise, violations of 21 U.S.C. Secs. 846 and 841(a), and 18 U.S.C. Sec. 1952(a)(3), respectively. Milan Parik has appealed his conviction, assigning as error (i) the district court's failure to give a cautionary instruction to the jury for certain uncharged misconduct which was admitted into evidence over Parik's objection, and (ii) the court's admission of allegedly unauthenticated physical evidence. Lida Parik is not a party to this appeal. Finding no reversible error, we affirm Milan Parik's conviction.
 
 
 2
 Jim Cooksey was a frequent cocaine customer of the Pariks. There came a time, however, when Cooksey agreed to work as an informant for the New Jersey state police and the United States Bureau of Alcohol, Tobacco, and Firearms (BATF). In furtherance of his informant activities Cooksey met with Milan Parik in Huntington, West Virginia, in January 1985 to consummate an exchange of eight ounces of cocaine Cooksey and the Pariks had previously arranged telephonically. The exchange was not immediate, however. Milan Parik and Jim Cooksey rendezvoused with friends and spent most of the weekend partying, apparently consuming part of the cocaine Parik was to deliver to Cooksey.
 
 
 3
 Eventually Parik handed over to Cooksey a paper sack containing three plastic bags of cocaine; the plastic bags contained what Parik represented to Cooksey to be eight ounces of cocaine, less what the foursome had consumed earlier that weekend. Cooksey took delivery of the drugs, but told Parik that he (Cooksey) had to get the money for this transaction from another person. Parik returned to his home in New York.
 
 
 4
 Three days later Cooksey surrendered ostensibly the same supply of cocaine to a BATF agent in Ashland, Kentucky. An ensuing laboratory analysis of the cocaine disclosed that the drugs weighed 7.13 ounces.
 
 
 5
 Two days after Cooksey turned the Cocaine over to the BATF agent--five days after he received it from Milan Parik--Cooksey's point of contact in the New Jersey state police telephoned Lida and Milan Parik at their New York residence and made arrangements to meet the couple in New Jersey to pay for the cocaine previously delivered to Cooksey and to purchase an additional quantity of the drug himself.
 
 
 6
 Milan and Lida Parik, and their two minor children, met the New Jersey officer according to plan, delivered to him a sample quantity of cocaine for testing purposes, and were immediately arrested. Their arrest in New Jersey eventually resulted in their standing trial in the United States District Court for the Southern District of West Virginia, at Huntington, on the three federal charges recited previously in this opinion; this appeal arises from that trial and conviction.
 
 
 7
 Milan Parik moved to supporess testimony pertaining to the arrangements made for the New Jersey cocaine transaction and his resulting arrest. The motion was overruled and the testimony was admitted.
 
 
 8
 Parik concedes that evidence of the uncharged misconduct in New Jersey was relevant to his prosecution in the Southern District of West Virginia, but he argues that it was unduly prejudicial in that from it the jury could conclude that he was 'a bad person, worthy of punishment, and someone with a propensity for drug dealing,' and that it 'might confuse the issues and mislead the jury,' absent limiting instructions. The district court instructed the jury that evidence of prior criminal misconduct by Parik should be considered only in determining his predisposition or readiness to commit the charged offense. No such limiting instruction was given as to Parik's subsequent uncharged misconduct. However, no objection was raised at trial over the court's failure so to instruct.
 
 
 9
 We decided these very issues in United States v. Masters, 622 F.2d 83 (4th Cir. 1980). A recitation from a portion of that opinion is directly applicable to and dispositive of the issues Milan Parik now urges on us:
 
 
 10
 The federal rule, both prior to and as stated in Rule 404(b), Federal Rules of Evidence--characterized as the 'inclusive rule,'--'admits all evidence of other crimes [or acts] relevant to an issue in a trial except that which tends to prove only criminal disposition.' This was the view taken of the rule by us in United States v. Woods, 484 F.2d 127, 134 (4th Cir. 1973), cert. denied, 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 21875 (1974). Manifestly the rule, even though correctly described as 'inclusionary,' does not permit the automatic admission of any evidence of other 'crimes, wrongs or acts.' The evidence of other crimes must be relevant for a purpose other than showing the character or disposition of the defendant. . . . The circumstances under which such evidence may be found relevant and admissible under the rule have been described as 'infinite.' Some of such circumstances are set forth in the rule itself, but the cataloguing therein is merely illustrative and not exclusionary. . . . One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence 'furnishes part of the context of the crime' or is necessary to a 'full presentation' of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its 'environment' that its proof is appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the 'res gestae" or the uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . .' [and is thus] part of the res gestae of the crime charged.' And where evidence is admissible to provide this 'full presentation' of the offense, '[t]here is no reason to fragmentize the event under inquiry' by suppressing part of the 'res gestae.' . . .. '[T]he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void--without knowledge of the time, place and circumstances of the acts which form the basis of the charge.'
 
 
 11
 622 F.2d 85-86.
 
 
 12
 The district court specifically referred to Masters in overruling Milan Parik's suppression motion and systematically determined that inclusion of the evidence was called for. Whether it should have been admitted, and whether a cautionary instruction was called for, are decisions committed to the sound discretion of the district court. We will not disturb this discretion unless it has acted arbitrarily or irrationally. United States v. Masters, 622 F.2d 87, 88.
 
 
 13
 The record manifestly discloses that the district court admitted the evidence only after carefully weighing its potential for undue prejudice against the necessity for the government to present a complete, lucid case to the jury. We fine neither arbitrariness, irrationality, nor error in the court's ruling.
 
 
 14
 Parik next seeks reversal of his conviction because of the span of time that elapsed between informant Cooksey's receiving the eight ounces of cocaine and his turning it over to a BATF official two days later. Parik urges that the chain of custody was broken by this lapse of time, and in support of his argument he offers a minor testimonial disagreement.
 
 
 15
 Informant Cooksey testified on direct examination as follows:
 
 
 16
 Q. The packaging, does that appear to be the same manner and means in which it was packaged when you received it from Milan Parik?
 
 
 17
 A. It was all in one bag.
 
 
 18
 On cross-examination by Milan Parik's counsel Cooksey testified as follows:
 
 
 19
 Q. Where did you put the cocaine . . .?
 
 
 20
 A. Put it in the car.
 
 
 21
 Q. Where?
 
 
 22
 Q. It was in a bag . . ..
 
 
 23
 Q. Just in an open plastic bag.
 
 
 24
 A. It was in a paper bag.
 
 
 25
 Q. You couldn't see through the paper bag, right?
 
 
 26
 A. No.
 
 
 27
 Q. Brown paper or some other kind of shopping bag?
 
 
 28
 A. Shopping bag. Yes.
 
 
 29
 The cocaine's next appearance in the trial record occurred during the direct examination of the BATF agent to whom Milan Parik delivered the cocaine two days after receiving it from Cooksey. The agent testified that 'Mr. Cooksey came in and handed me three packets of a white looking substance and told me it was cocaine.' The agent identified the package of physical evidence offered at trial as being the same three Cooksey delivered to him. Milan Parik's counsel sought to impeach the agent's identification and chain of custody testimony based on the three packets/one bag incongruity. However, that colloquy went as follows:
 
 
 30
 Q. . . . and when Mr. Cooksey gave you this cocaine, it was, as you say, in three separate packages?
 
 
 31
 A. Yes, sir.
 
 
 32
 Q. As we see them in that bag?
 
 
 33
 A. That's the way it appears, yes, sir.
 
 
 34
 Parik's counsel objected that the cocaine presented at trial was not satisfactorily proven to be the same that Parik allegedly delivered to Cooksey. The district court overruled the objection and admitted the evidence. We perceive no error in this ruling.
 
 
 35
 It appears that the subject cocaine was sequentially identified, and thus authenticated, by Cooksey, the BATF agent, and the government's forensic expert who analyzed the cocaine and testified as to its quantity and purity.
 
 
 36
 Authentication of evidence is governed by Rule 901(a), Federal Rules of Evidence:
 
 
 37
 General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 
 
 38
 Rule 901(b) lists illustrative methods for authenticating evidence, the first of which provides as follows:
 
 
 39
 (1) Testimony of Witness With Knowledge. Testimony that a matter is what it is claimed to be.
 
 
 40
 This case offers very nearly a textbook example of the proper application of Rule 901(a) and (b)(1), Federal Rules of Evidence. The subject cocaine was displayed before the government's informer, Cooksey, who readily and unshakeably identified it as that he received from Milan Parik. The BATF agent to whom he delivered it, and the forensic expert who received it from the agent, both sequentially identified the cocaine. No error has been shown in the district court's admitting the cocaine into evidence after overruling the appellant's objection as to its authenticity.
 
 
 41
 We find that the facts and legal arguments are adequately presented in the parties' briefs and the record on appeal and that the decisional process would not be significantly aided by oral argument. Accordingly, pursuant to and in accordance with Fed. R. App. P. 34(a) and Local Rule 34(c), we dispense with oral argument and affirm the jury's conviction of Milan Parik.
 
 
 42
 AFFIRMED.